## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

PAUL BROTHERS IV,                  :
                                   :
    Plaintiff,              :
                                   :
       v.                :     Case No. 3:22-cv-00432-REP
                                   :
C.O. BALDERSON, et. al.,           :
                                   :
    Defendants.             :

### DEFENDANT, SHERIFF C.O. BALDERSON'S, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF, PAUL BROTHERS IV'S, COMPLAINT

COMES NOW, Defendant, Sheriff C.O. Balderson, ("Sheriff Balderson"), by and through undersigned counsel, Alexander Francuzenko, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and states the following in support of his Motion to Dismiss Plaintiff, Paul Brothers IV's ("Plaintiff"), Complaint against him:

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff worked for the Westmoreland County Sheriff's Office ("WCSO") as a Deputy Sheriff.  Compl. ¶ 1.  Plaintiff claims that in March of 2021, he began to inquire into issues concerning his compensation for overtime hours and discrepancies about "comp time."  Compl. ¶ 9.  Plaintiff also claims that he spoke to the Southern States Police Benevolent Association, Inc. ("SSPBA") regarding the issues.  Compl. ¶ 8.   Plaintiff asserts that his inquiries would have "uncovered financial improprieties" on the part of Sheriff Balderson, and therefore such inquiries were discouraged by a coworker.  Compl. ¶¶ 13, 15.  Plaintiff claims that his termination from employment was actually due to his inquiries into the overtime and "comp time" issues, and not for his performance on April 3, 2021.  Compl. ¶ 63.

1

On April 3, 2021, Plaintiff states that he responded to a call for a domestic disturbance at a residence where there was an individual who suffered from paranoid schizophrenia and another individual who was inebriated.  Compl. ¶¶ 17, 18, 42.  During the disturbance, Plaintiff admits to yelling at the inebriated individual early in the encounter, and after the individual began yelling back and stood up from where he was sitting, Plaintiff decided to detain him.  Compl. ¶¶ 23, 25, 26.  According to Plaintiff, he was instructed later by a supervisor to arrest the inebriated individual. Compl. ¶ 28. Plaintiff did so and took the individual to jail.  Compl. ¶¶ 32, 33. Plaintiff claims that the inebriated individual threatened him multiple times, and when Plaintiff was finally taking off the individual's handcuffs, the individual "pull[ed] his arm back while making a fist."  Compl. ¶¶ 33, 36, 39.  Plaintiff states that in response, Plaintiff took the individual to the ground and handcuffed him again, leaning on the individual's back with Plaintiff's leg.  Compl. ¶ 39.

Plaintiff maintains that his behaviors were consistent with both the law and the policies and general orders of WCSO.  Compl. ¶¶ 44, 45.  Plaintiff states that he was then placed on administrative leave and eventually terminated on May 20, 2021.  Compl. ¶¶ 46, 49.  Plaintiff alleges that on May 25, 2021, Sheriff Balderson sent a Notice of Eligibility for Decertification to the Virginia Department of Criminal Justice Services ("DCJS") which stated that Plaintiff was "terminated for a violation of state or federal law and for an act committed while in the performance of the officer's duties that comprises (sic) an officer's credibility, honesty, or other characteristics that constitute exculpatory or impeachment evidence in a criminal case."  Compl. ¶ 50.  Plaintiff claims the Notice was later amended to remove the allegation about Plaintiff's honesty and integrity.  Compl. ¶ 56.  Plaintiff also states that after a hearing at DCJS on September 21, 2021, the Committee decided to reinstate Plaintiff's eligibility to be certified as a

law enforcement officer.  Compl. ¶ 58.  Fourteen days after his reinstatement, on October 5, 2021, Plaintiff was hired as a law enforcement officers with the Colonial Beach Police Department ("CBPD").  Compl. ¶59.

Plaintiff filed his Complaint in Westmoreland County Circuit Court on May 20, 2022. Because Plaintiff alleged multiple federal question claims, a Notice of Removal to this Court was filed on June 10, 2022.  ECF No. 1.  In his Complaint, Plaintiff alleges that he was wrongfully terminated in Count I, defamed in Count II, that his rights under the Fair Labor Standards Act ("FLSA") were violated in Count III, and that his rights under the First Amendment to the Constitution of the United States were violated in Count IV.  Plaintiff states that his termination was designed to prevent Sheriff Balderson's improper and/or illegal behaviors from being discovered and to serve as an example so that other WCSO employees would not question overtime and "comp time" issues.  Compl. ¶¶ 63, 64.  Plaintiff claims that the Termination Letter and the Decertification Notice were defamatory.  Compl. ¶ 68.  Plaintiff claims that he was not paid for overtime and "comp time" hours that he earned. Compl. ¶ 88.  Finally, Plaintiff asserts that he was prevented from speaking about matters of public concern and from participating with the SSPBA due to his termination.  Compl. ¶¶ 93, 94.

## STANDARD OF LAW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted.  Fed R. Civ. P. 12(b)(6).  Complaints are dismissed when they fail to assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory.  See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).  All allegations and favorable inferences that can be drawn from those

allegations must be viewed in a light most favorable to the non-moving party.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court initially elucidated a plausibility pleading standard in Bell Atl. Corp. v. Twombly stating that a complaint must contain sufficient factual matter that if accepted as true, would "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (1955).  Later, in Ashcroft v. Iqbal, the Supreme Court reaffirmed its stance on the plausibility standard, holding that it requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully," and instead requires a plaintiff to articulate facts that, if true, show that the plaintiff has stated a claim entitling him or her to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 557).

"The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully… Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678, (quoting Twombly, 550 U.S. at 557).  The plausibility standard requires that a complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Twombly, 550 U.S. at 555).

## ARGUMENT

Plaintiff has either not stated a cause of action recognized under the applicable law or has not alleged sufficient facts to state a cause of action for any of his claims.  Therefore, the Complaint must be dismissed.  The claim set forth in Count I fails as a matter of law because his

"wrongful termination" cause of action has no basis in Virginia law.  In Count II, Plaintiff does not state sufficient facts to make out defamation or defamation per se, and even if he had, Sheriff Balderson is protected from liability by the qualified privilege to defamation.  Plaintiff fails to set forth his FLSA claim in Count III because he does not allege even the most basic facts necessary to state a cause of action.  This failure to set forth the most basic allegations sufficient to state a claim is compounded in Count IV, where Plaintiff fails to even mention the vehicle by which he purports to bring his First Amendment claim.  Regardless, in both Count III and Count IV, Sheriff Balderson enjoys Eleventh Amendment immunity.  Because no Count in the Complaint has met the applicable standard, the Complaint must be dismissed in its entirety with prejudice.

I.   **Plaintiff's wrongful termination claim, Count I, has no basis in Virginia law.**

"The employment-at-will doctrine, pursuant to which either party in an employment relationship may end the association upon furnishing reasonable notice, is a firmly embedded precept of the common law of Virginia."  Leverton v. AlliedSignal, Inc., 991 F. Supp. 486, 488 (E.D. Va. 1998); Oakley v. May Dep't Stores Co., 17 F. Supp. 2d 533, 535 (E.D. Va. 1998). "[T]he Virginia Supreme Court recognized one exception to this doctrine. The court in Bowman held that employees may recover damages from employers for discharges that are against Virginia's public policy." Oakley, 17 F. Supp. 2d at 535; McCarthy v. Texas Instruments, Inc., 999 F. Supp. 823, 828 (E.D. Va. 1998); see generally Bowman v. State Bank of Keysville, 229 Va. 534 (1985).  These "Bowman" claims are a very narrow exception to Virginia's 'at will' employment rule for plaintiffs who were fired against a public policy that "find[s] root in a state statute."  McCarthy, 999 F. Supp. at 829.

"The exception does not apply to 'private rights,' but, instead, to policies established by laws that are designed to protect the public."  Oakley, 17 F. Supp. 2d at 535.  Such claims are

limited to those which violate public policies "underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general."  See Miller v. SEVAMP, Inc., 234 Va. 462, 468 (1987).  This Court has provided an apt history of Virginia Bowman claim jurisprudence in its Leverton opinion.  Leverton, 991 F. Supp. at 487-90.  More recently, this Court has explained that Bowman claims may only proceed in three specific circumstances:

> The first situation arises when an employer violated a public policy that a statute "explicitly expresse[s],… and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy."  The second scenario occurs when "an employer violated a policy enabling the exercise of an employee's statutorily created right" [as in the Miller case].  The third and final situation applies when an employer discharged an employee for "refusing to engage in a criminal act."

Williams v. TMS Int'l, LLC, No. 3:21CV260 (DJN), 2021 WL 4071868, at *5 (E.D. Va. Sept. 7, 2021); see generally Miller, 234 Va. 462.

Importantly, to successfully set forth such a claim in Virginia, a plaintiff "must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff."  Jones v. HCA, 16 F. Supp. 3d 622, 636 (E.D. Va. 2014); McCarthy, 999 F. Supp. at 829.  Here, Plaintiff does not, and cannot, advance any statute or public policy which his termination is meant to have violated.  Indeed, the only codified laws Plaintiff contends were violated in his Complaint are the FLSA and the United States Constitution.  Neither of these are a Virginia state statute as is required to set forth a Bowman claim.  Jones, 16 F. Supp. 3d at 636.  Without identifying a specific Virginia statute in which the General Assembly has established a public policy, a wrongful discharge claim fails under Virginia law.  Leverton, 991 F. Supp. at 490.

Furthermore, Plaintiff cannot amend to provide such a state statute because the Virginia Supreme Court has expressly refused to recognize a cause of action for "a generalized, common-

law 'whistleblower' retaliatory discharge claim… as an exception to Virginia's employment-at-will doctrine…"  See Dray v. New Mkt. Poultry Prod., Inc., 258 Va. 187, 191 (1999); see also Miller, 234 Va. at 468, and Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 99, (1996).  This is precisely the type of claim that Plaintiff is attempting to advance in Count I.  Because Count I does not and cannot assert a viable cause of action under Virginia law, it must be dismissed with prejudice.

## II.   Plaintiff fails to allege sufficient facts to state a claim for defamation and/or defamation per se in Count II.

Plaintiff fails to set forth sufficient facts to allege defamation or defamation per se.  To be defamatory in Virginia, a statement must be 1) actionable, 2) published, with 3) the requisite intent.  Shaheen v. WellPoint Companies, Inc., 490 F. App'x 552, 555 (4th Cir. 2012).  "To be actionable, a statement must be both false and defamatory."  Id.  "Merely offensive or unpleasant statements are not defamatory; rather, defamatory statements are those that make the plaintiff appear odious, infamous, or ridiculous."  Echtenkamp v. Loudon Cnty. Pub. Sch., 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (internal quotations omitted).  Statements that are considered defamatory per se, include those that "impute an unfitness to perform the duties of a job or lack of integrity in the performance of duties, or prejudice the party in her profession or trade."  Shaheen, 490 F. App'x at 555.  "Whether a statement is actionable as defamatory and whether it is defamatory per se are matters of law for the trial judge to determine."  Taylor v. CNA Corp., 782 F. Supp. 2d 182, 201 (E.D. Va. 2010).

Further, the publication element "requires a dissemination of the statement to a third party where that dissemination does not occur in a privileged context."  Echtenkamp, 263 F. Supp. 2d at 1061.  "Under Virginia law, a qualified privilege attaches to communications between persons on a subject in which the persons have an interest or duty."  Meredith v. Nestle

Purina Petcare Co., 516 F. Supp. 3d 542, 556 (E.D. Va. 2021) (internal quotation omitted);

Shaheen, 490 F. App'x at 555.  Further, "statements made between co-employees and employers

in the course of employee disciplinary or discharge matters are privileged."  Taylor, 782 F. Supp.

2d at 202.  "Thus, the privilege applies broadly to all statements related to employment matters,

provided the parties to the communication have a duty or interest in the subject matter."  Id.

In the Complaint paragraph 68, Plaintiff notes two instances which are pled *in haec*

*verba*[1] sufficient to set forth potentially actionable statements: 1) the "allegations against

Brothers submitted to DCJS" which are in the Decertification Notification attached as Exhibit 1

to the Complaint, and 2) the "allegations listed in the May 20th letter terminating Brothers' (sic)

employment" which is attached as Exhibit A to the Complaint.  Compl. ¶ 68.  No other allegedly

defamatory statements are set forth by Plaintiff in the Complaint.  The Termination Letter does

not contain any actionable statements and neither the Termination Letter or the Decertification

statements as alleged meet the publication element.

The Termination Letter contains no actionable statements because the statements are not

false according to the Complaint nor are they defamatory.  The Termination Letter states, in its

entirety, "Senior Deputy Brothers, Upon considerable review and evaluation of a recent incident,

your service with the Westmoreland County Sheriff's Office is terminated effective Thursday,

May 20, 2021.  Return all issued uniforms and equipment to the sheriff's office immediately for

inventory.  Any items not returned or that are damaged/destroyed, unless due to normal wear and

tear, shall be reimbursed by you."  Compl. Ex. A.  Notably, the facts alleged in the Complaint

---

[1] In Virginia, defamation must be pled *in haec verba*, with the exact words spoken or written set
out in the pleading.  Fuste v. Riverside Healthcare Ass'n, Inc., 265 Va. 127, 134 (2003).

agree with the statement in the Termination Letter.  Plaintiff states that he was, in fact, terminated on May 20, 2021.  Compl. ¶ 49.

To the extent that Plaintiff alleges that the "upon considerable review and evaluation of" portion of the statement is false, it is a matter of opinion how much review and evaluation is "considerable" and therefore, not actionable.  See Tharpe v. Saunders, 285 Va. 476 (2013) ("Accordingly, 'pure expressions of opinion' are constitutionally protected and 'cannot form the basis of a defamation action.'  'Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.'" (citing Williams v. Garraghty, 249 Va. 224, 233 (1995) and Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 132 (2003)).  Further, nothing in the statement is defamatory.  The mere fact that his employment was terminated, although unpleasant, does not make Plaintiff appear odious, infamous, or ridiculous.  As worded, the Letter is actually quite benign, and therefore, Plaintiff has not sufficiently pled that it contains an actionable statement.

Plaintiff is also unable to successfully allege the publication element sufficient to survive a motion to dismiss for either statement.  Taking the second statement first, the Termination Letter, Plaintiff does not allege that it was published at all.  Plaintiff plainly received the Termination Letter himself but alleges no facts to support that any other third party received the Letter.  Therefore, to the extent that the defamation and/or defamation per se claim is premised on the statements in the Termination Letter, Count II must be dismissed.

With respect to the first statement, the Decertification Notice, Plaintiff alleges that the Notice went to both DCJS and to CBPD.  Regardless, Plaintiff still fails to allege the publication element, as Virginia requires the dissemination of the statement to a third party that does not share a corresponding interest or duty which would make the communication privileged.  As

explained in detail _infra_ in the next section of this brief, since the privilege applies here, Plaintiff again fails to allege the publication element with respect to the Decertification Notice.  Further, to the extent that the Court finds that the second statement, the Termination Letter, was published to third parties within the department, within DCJS, or within CBPD, it too is subject to the qualified privilege.  Nedrick v. Southside Reg'l Med. Ctr., No. 3:19CV202, 2020 WL 534052, at *7 (E.D. Va. Feb. 3, 2020).  As no other _in haec verba_ defamatory statements are pled in the Complaint, Count II must be dismissed in its entirety, and since the statute for defamation[2] has run as of the date the Complaint was filed, this dismissal must be with prejudice as it cannot be cured.

**A.  Sheriff Balderson is protected by the qualified privilege to defamation.**

As stated _supra_, a qualified privilege to defamation attaches to communications "made on a subject matter in which both the person communicating and the person to whom the communication is made have a corresponding interest, or owe a corresponding duty, legal, moral, or social."  See Great Coastal Exp., Inc v. Ellington, 230 Va. 142, 153 (1985).  Here, Plaintiff states that the Decertification Notice was provided to DCJS, in the context of Plaintiff's attempted decertification, and to CBPD, presumably as part of the personnel records required to be sent to Plaintiff's next place of employment.  Compl. ¶¶ 68, 59.  It is not alleged that the Termination Letter was sent to any third party, however, for the purposes of this analysis, we assume _arguendo_ that it was also sent along with the Decertification Notice to CBPD.

These communications are both privileged because of the corresponding interests and duties between Sheriff Balderson and the parties to whom he communicated.  Indeed, with

---

[2] The statute of limitation for defamation claims in Virginia is one year.  Gov't Micro Res., Inc. v. Jackson, 271 Va. 29, 38 (2006).

respect to either of the communications being directed to the DCJS, the corresponding duty is mandated by Va. Code § 15.2-1705(B).  This code section requires notification be sent to the Board within 48 hours of when an officer is terminated or resigns in pertinent part: 1) "for a violation of state or federal law," 2) "for engaging in serious misconduct as defined in statewide professional standards of conduct adopted by the Board," or 3) "for an act committed while in the performance of his duties that compromises an officer's credibility, integrity, honesty, or other characteristics that constitute exculpatory or impeachment evidence in a criminal case." Va. Code § 15.2-1705(B).  According to this code section, reporting the eligibility for decertification is not optional.  Id.  Such a clear legal duty imposed on the part of Sheriff Balderson plainly triggers the attachment of the qualified privilege.  Note that with the privilege, even if the statement is false, which Sheriff Balderson contests, liability for defamation cannot attach.

The corresponding interest and duty between Sheriff Balderson and the CBPD is just as strong.  Especially in today's climate, a full depiction of an officer's behavior in his or her previous place of employment is necessary with respect to the hiring and onboarding of a new member of law enforcement.  Furthermore, these communications are also codified in Va. Code § 15.2-1709 as immune from liability.  That section states in pertinent part:

> Any sheriff or chief of police, any director or chief executive of any agency or department employing deputy sheriffs or law-enforcement officers as defined in § 9.1-101 or jail officers as defined in § 53.1-1, and the Director of the Department of Criminal Justice Services or his designee who discloses information about a former deputy sheriff's or law-enforcement officer's or jail officer's job performance or information requested pursuant to subsection B of § 15.2-1705 to a prospective law-enforcement or jail employer of the former appointee or employee is immune from civil liability for such disclosure or its consequences unless the information disclosed by the former employer was knowingly false or deliberately misleading, was rendered with malicious purpose, or violated any civil right of the former employee or appointee.

Va. Code § 15.2-1709.  Therefore, the qualified privilege to defamation applies both to the Termination Letter and to the Decertification Notice due to the corresponding legal duties shared by Sheriff Balderson, DCJS, and CBPD.

Once the qualified privilege has attached, to avoid the application of the privilege, a plaintiff then has the burden to show "that the defamatory words were spoken with common-law malice."  Shaheen, 490 F. App'x at 555.  Plaintiff must show "that the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff."  Taylor, 782 F. Supp. 2d at 202; Shaheen, 490 F. App'x at 555; Nedrick v. Southside Reg'l Med. Ctr., No. 3:19CV202, 2020 WL 534052, at *8 (E.D. Va. Feb. 3, 2020) ("Malice sufficient to overcome a qualified privilege is behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.") "[T]he Supreme Court of Virginia has held 'that employment matters are occasions of privilege in which the absence of malice is presumed.'"  Nedrick, 2020 WL 534052, at *8 (citing Dragulescu v. Va. Union Univ., 223 F. Supp. 3d 499, 507 (E.D. Va. 2016), citing Larimore v. Blaylock, 259 Va. 568, 572-73 (2000)); Meredith, 516 F. Supp. 3d at 556.

Importantly, such a claim of malice sufficient to overcome the qualified privilege must be shown by clear and convincing proof.  Taylor, 782 F. Supp. 2d at 203 (citing Southeastern Tidewater Opportunity Project, Inc. v. Bade, 246 Va. 273, 276 (2000).  The fact that this standard is elevated to clear and convincing proof, Shaheen, 490 F. App'x at 556, is what allows the Court to decide the matter at the motion to dismiss stage.  "[F]ederal courts have required plaintiffs to set forth a sufficient allegation of malice to survive a motion to dismiss."  Meredith, 516 F. Supp. 3d at 557.  The Eastern District of Virginia has found that conclusory allegations do

not meet the standard, instead, facts sufficient to support such malice by clear and convincing evidence must be alleged:

> In considering whether [a] complaint meets that burden, it must first be noted that plaintiff's repeated assertions that each defendant charged with defamation acted "with malice" and with a "motive of personal spite and revenge" are not, by themselves, sufficient to state a claim of malice sufficient to overcome the qualified privilege.  Although the facts as alleged in the complaint must be taken as true for the purpose of this motion to dismiss, such conclusory allegations do not state a claim for malice if the facts as alleged cannot otherwise support a finding of malice… Were such bare allegations sufficient to state a claim of malice, virtually every claim of defamation based on a [] report of misconduct would survive a motion to dismiss.

Echtenkamp, 263 F. Supp. 2d at 1062.

Here, Count II is rife with conclusory allegations, repeating buzzwords with the correct language, but without any substantive merit.  Compl. ¶¶ 68-84.  Plaintiff repeatedly asserts that the allegations against him were "false and baseless," made with the intent to damage Plaintiff, and made willfully, maliciously, and recklessly.  Id.  Without more, the language of the Complaint is not sufficient to meet the elevated clear and convincing proof standard requiring facts which, if taken as true, might rise to the necessary level of hatred, revenge, personal spite, or ill will which existed independent of the occasion on which the communication was made.

The policy underlying the qualified privilege exists in this circumstance to encourage sheriffs and chiefs to hold law enforcement officers accountable for instances of excessive force in Virginia.  A simple parroting of the buzzwords required to defeat such a privilege is not sufficient to expose a sheriff to liability for performing the duty required of him or her under Virginia law to protect the Commonwealth's citizens.  Therefore, because the qualified privilege applies to the communications at issue and because Plaintiff has not pled malice sufficient to overcome the privilege by clear and convincing proof with his conclusory allegations, Count II must be dismissed with prejudice.

**III.    Plaintiff fails to allege sufficient facts and fails to state a claim for a violation of the FLSA in Count III.**

In order to state a claim for nonpayment of overtime wages under 29 U.S.C. § 207, a plaintiff in general must plead "(1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." Alley v. Quality Eco Techs., LLC, No. 3:20CV355, 2021 WL 1196188, at *9 (E.D. Va. Mar. 29, 2021) (citing Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 667 (D. Md. 2011)).  This Court espouses a lenient approach, "requiring only that a plaintiff detail the types of work activities that occupied Plaintiffs' alleged overtime hours in order to provide Defendants with sufficient notice of the basis of the allegations to form a response." Id. (internal citations omitted).

To this end, a plaintiff need not detail the specific hours worked for which he or she did not receive compensation, however, "they must still allege sufficient factual content from which the Court can infer that a defendant failed to pay overtime wages." Id. (internal citation omitted.)  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017) (internal citation omitted). "A plaintiff may meet this initial standard by estimating the length of h[is] average workweek during the applicable period and the average rate at which []he was paid, the amount of overtime wages []he believes she is owed, or any other facts that will permit the court to find plausibility." Id.  (internal citation omitted).

Although this is a low burden, here Plaintiff does not meet it.  Plaintiff states that "Defendants improperly and illegally failed to pay Brothers the compensation for overtime hours he worked and "comp time" he earned."  Compl. ¶ 88.  Plaintiff maintains that he was "entitled

to, but had not received, compensation for twenty-five (25) to thirty (30) hours of overtime hours worked and/or "comp time" earned." Compl. ¶ 9.  No other details are alleged in the Complaint with respect to overtime or "comp time" wages allegedly owed.[3]  As pled, Sheriff Balderson cannot ascertain sufficient facts to understand the basis of the allegations in order to form a response, nor can the Court can infer that he failed to pay overtime wages.

For one, overtime and "comp time," which is extra time off in lieu of overtime pay allowed in certain circumstances, are not the same.  Overtime and "comp time" are not treated the same under the FLSA.  See 29 U.S.C.A. § 207 (a) (overtime requirements), (k) (law enforcement partial exception), and (o) ("comp time" requirements).  Plaintiff stated that he was entitled to overtime compensation "and/or" "comp time" earned, however, there are specific rules that must be followed for each of these types of "compensation" for hours worked over the maximum number of hours allowed per pay period under the FLSA.  "Comp time" does not apply in all circumstances and has limitations.  29 U.S.C.A. § 207 (o); See Baker v. Stone Cnty., Mo., 41 F. Supp. 2d 965, 992 (W.D. Mo. 1999) ("Compensatory time off may be awarded in lieu of pay if there is an 'agreement or understanding' between the employer and employee.")

Furthermore, as pled, Plaintiff's use of the conjunction "and/or" makes interpreting his claim of with respect to for what and how much he is entitled exceedingly difficult due to this vagueness.  It is unclear if there is a mix of overtime and "comp time" at issue or if there is only one or the other at issue.  It is not even estimated what that split might be, if it is a split.  Without alleging more, Sheriff Balderson cannot begin to address the claims.

---

[3] To the extent that Plaintiff claims he is owed vacation time, vacation time is not covered under the FLSA and Plaintiff would have needed to bring a different type of claim to attempt to recover for vacation time he contends he is still owed.

This vagueness is further complicated by the fact that law enforcement officers do not fall under the general section (a) of the FLSA with respect to "maximum hours."  Instead, they are partially exempt under section (k), which points to a federal regulation that expressly sets forth an ratio of hours per work period in a chart.  29 U.S.C.A. § 207 (a)(k); 29 C.F.R. § 553.230; <u>see also</u> <u>Brock v. City of Cincinnati</u>, 236 F.3d 793, 809 (6th Cir. 2001) ("29 U.S.C. § 207(k) contains an exception from § 207(a) that permits law enforcement agencies to pay straight time over a slightly longer week than ordinary employers can use.")  Because law enforcement work periods are often atypical, the chart sets forth the number of days in the work period, and the maximum number of hours that a law enforcement officer may work without receiving overtime compensation in that work period.  29 C.F.R. § 553.230.  Plaintiff has paid this chart no mind— he does not allege a work period or periods to which these claimed 25 to 30 hours of uncompensated overtime are tied.  Plaintiff does not even estimate a length of an average work period as required.  <u>Hall</u>, 846 F.3d at 777.

In this case, not alleging an applicable work period matters.  It is not sufficient to plead merely that he has not be paid for X number of overtime hours.  Especially because he is partially exempt from section (a) of the "maximum hours" portion of the FLSA, Plaintiff must, at least, allege an estimated applicable work period to state a plausible claim.  This is because Plaintiff's claimed 25 to 30 hours of uncompensated overtime could be under the applicable maximum number of hours standard from 29 C.F.R. § 553.230 during the wide range of dates Plaintiff  has claimed,[4] and therefore, not compensable as overtime or "comp time."[5]  Because

---

[4] Plaintiff states that in January of 2021 Sheriff Balderson was directed to stop paying overtime wages, Compl. ¶ 87, and that Plaintiff began inquiring into overtime and "comp time" issues in March of 2021.  Compl. ¶ 9.

[5] <u>See</u> <u>Brock</u>, 236 F.3d at 809 ("[P]olice agencies must pay overtime only when employees work "tours of duty which in the aggregate exceed" 171 hours in a 28–day work period or 86 hours in

Plaintiff has not pled an applicable work period, there is no way to tell if his alleged overtime hours are in fact overtime hours for which he must be compensated at 1½ times his normal rate, or if they are under the maximum hours standard elucidated in the chart.[6]   As this pleading does not meet the necessary standard to state a claim for relief, Plaintiffs FLSA overtime and "comp time" claim, Count III, must be dismissed.

## IV.   **Plaintiff fails to state a claim for a violation of any of his First Amendment rights in Count IV.**

Ostensibly, Plaintiff, as a public employee, attempts to assert a First Amendment retaliation claim.  Plaintiff intimates, but never states, that his termination was a retaliation which prevented him from speaking about "matters of public concern," however, the three paragraphs Plaintiff devotes to asserting a First Amendment claim are insufficient at best.  Compl. ¶¶ 92-94. Nowhere in the three paragraphs does Plaintiff mention the vehicle by which this claim is presumably brought, 42 U.S.C. § 1983.  Id.  Plaintiff also appears to involve past coworkers, stating that both he and "other WCSO employees" were prevented from speaking about "matters of public concern" and prevented from "participating with the SSPBA."  Id.  Of course, Plaintiff does not have standing to bring a First Amendment retaliation claim on behalf of his previous coworkers.  Further, Plaintiff does not associate Count IV with any prayer for relief, making it unclear if he is asking for damages or equitable relief.

---

a 14–day period, which break down to maximum workweeks of 42.75 and 43 hours, respectively.")

[6] Assuming a work period of 28 days, in three work periods (January to March), Plaintiff would have been allowed to work a total for those three months of 33 hours above the 40 hour work week depending on the allocation of those hours over each work period. ((171 (maximum hour standard for work period of 28 days) × 3 months) – (160 (number of hours in 28 days assuming 40 hour work week) × 3 months) = 33 hours).  Thirty-three hours, which would be the maximum number of hours allowed to be worked without providing overtime or "comp time" compensation to a law enforcement officer in three 28 day work periods, is greater than the number of hours alleged by Plaintiff, 25-30 hours.

Plaintiff, as master of his Complaint, had the opportunity to concisely draft his First Amendment claim to clearly communicate that he was bringing a retaliation claim under § 1983. As Plaintiff is represented by counsel, his Complaint, is not entitled to be held to the less stringent liberal construction standard applied for *pro se* litigants.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Plaintiff merely implies a First Amendment retaliation claim using language frequently associated with such claims, failing to plead even the fundamental assertions required to state such a claim and therefore Count IV must be dismissed.  Should the Court determine that such language is sufficient to state a First Amendment retaliation claim, however, Sheriff Balderson asserts the following arguments for dismissal.

### A. Assuming *arguendo* that the Court finds Plaintiff has stated a First Amendment retaliation claim under § 1983, the claim is not sufficiently pled.

"In order to make out a claim for First Amendment retaliation, plaintiff must show (i) that []he engaged in speech on a matter of public concern, (ii) that the retaliatory action deprived h[im] of some valuable benefit, and (iii) that there is a causal connection between the protected action and the retaliatory speech, which would not have occurred "but for" the protected expression."  Echtenkamp, 263 F. Supp. 2d at 1057 (citing Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994)).  Plaintiff did not allege and cannot amend to sufficiently allege the first and third prongs of this test.

The first element requires that a plaintiff engage in speech on a matter of public concern. Whether the speech is on a matter of public concern is determined as a matter of law, Holland, 25 F.3d at 1255, by examining the "content, context, and form of the speech at issue in light of the entire record."  Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir.2000).  "An employee's speech involves a matter of public concern if it addresses an issue of social, political, or other

interest to a community." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006) (citation omitted).

"An inquiry into whether a matter is of public concern does not involve a determination of how interesting or important the subject of an employee's speech is," Urofsky, 216 F.3d at 407, but instead turns on whether the speech centers on matters of personal interest, such as employee grievances over internal working conditions. Holland, 25 F.3d at 1255. "The focus is… upon whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a 'private' matter between employer and employee." Id. (citation omitted). "[T]he inquiry is designed to avoid turning every public employee expression of dissatisfaction into a constitutional case." Id.

Internal personnel matters are not likely to arouse the public's interest and do not become matters of public concern merely because they occur in a public agency. Id. (citing Connick v. Myers, 461 U.S. 138, 149 (1983)). "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 138–39. The Supreme Court in Connick goes on to state, "when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide

latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. at 146.

Here, Plaintiff does not engage in speech on a matter of public concern, but instead as an employee individual speaking on a personal matter with respect to a personnel decision. Such speech is not likely to arouse the public's interests. Despite being quite important to Plaintiff himself, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment." McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998). In cases where plaintiffs have been found to be speaking on matters of public interest, courts have "emphasized the unrelatedness of the speech at issue to the speaker's employment duties." Urofsky, 216 F.3d at 407.[7]  This is not the case at bar.  The Complaint details a primarily private personnel matter regarding Plaintiff's compensation between Plaintiff and Sheriff Balderson, and therefore, the speech to Plaintiff's coworker and to the SSPBA about Plaintiff's overtime and "comp time" issues is not protected speech under the First Amendment.

Where a plaintiff has asserted a matter of public concern, the court must then weigh the interest in the public employee as a citizen in commenting upon those matters, and the interests of the employer in promoting the efficiency and effectiveness of the public service. McVey, 157 F.3d at 277 (referencing Pickering v. Board of Educ., 391 U.S. 563, 573 (1968), origin of the "Pickering" balancing test.) In conducting this balancing test, the Court "must take into account the context of the employee's speech, including the employee's role in the government agency,

---

[7] See also Connick, 461 U.S. at 144-45 where the Supreme Court discusses that the crux of the policy underlying the First Amendment retaliation claims is "whether government employees could be prevented or 'chilled' by the fear of discharge from joining political parties and other associations that certain public officials might find 'subversive.'"  The violative actions "sought to suppress the rights of public employees to participate in public affairs." Id.

and the extent to which it disrupts the operation and mission of the agency." Id. at 278. Here, Plaintiff's interests in speaking about his compensation concerns are not sufficient to outweigh Sheriff Balderson's interests in harmoniously operating the sheriff's office without disruption. Therefore, Plaintiff fails to meet the first prong of the test to determine whether a First Amendment retaliation claim has been asserted.

Nor can Plaintiff successfully allege the third prong of the test, that there is a causal connection between Plaintiff's speech and his termination. "Th[is] causation requirement is 'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." Ridpath, 447 F.3d at 318. "[T]he employee must establish a causal relationship between the protected expression and the retaliation: that the protected speech was a 'substantial factor' in the decision to take the allegedly retaliatory action." Vollette v. Watson, No. 2:12CV231, 2012 WL 3026360, at *5 (E.D. Va. July 24, 2012).

Plaintiff has, at best, implied a tenuous connection in time between his termination and speech on "compliance with state and federal law government (sic) compensation related to employment," Compl. ¶ 93, and his "participat[ion] with the SSPBA." Compl. ¶ 94.[8] This temporal relationship does not a causal connection make. Where a plaintiff has not alleged that the retaliation was ever explicitly linked to the protected speech, First Amendment claims have failed. See Echtenkamp, 263 F. Supp. 2d at 1060 (discussing Huang v. Bd. of Governors of Univ. of N. Carolina, 902 F.2d 1134, 1141 (4th Cir. 1990)).

In the two, very short, substantive paragraphs of Count IV, Plaintiff does not allege that his inquiries regarding overtime and "comp time" issues were a substantial factor for his

---

[8]   Plaintiff brought up the issues with his compensation in March 2021 and was terminated in May 2021.

termination.  Compl. ¶¶ 93, 94.  Indeed, the facts alleged in the body of the Complaint instead point to Plaintiff being terminated due to the incident on April 3, 2021, as do both of the exhibits attached to the Complaint which reference the incident.  Plaintiff has alleged no facts in the entirety of his Complaint which actually support his conclusory contention that his termination was pretextual.  His position is entirely speculative and the extrapolation that he makes in contending that he was fired for inquiring about his compensation is supported only by a proximity of time.

Because Plaintiff has not sufficiently alleged that he was retaliated against for exercising his First Amendment rights, Count IV fails and must be dismissed with prejudice.  Plaintiff has not asserted and cannot assert that the speech at issue is about a matter of public concern, nor has Plaintiff established a causal connection between the speech and his termination.

**B.  Alternatively, Sheriff Balderson enjoys Qualified Immunity.**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity."  Ridpath, 447 F.3d at 306.  In analyzing this immunity, there is a two prong test: (1) did the official violate a statutory or constitutional right, and (2) was the right clearly established at the time of the conduct.  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).  Without conceding and for the purposes of this defense only, see supra section A, Sheriff Balderson assumes that a constitutional right was violated and argues the second prong of the qualified immunity analysis.

In determining whether the right was clearly established at the time of the conduct, "[the Supreme Court] has repeatedly told courts… not to define clearly established law at a high level of generality." City of Escondito, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019).  "[T]he clearly established law must be 'particularized' to the facts of the case…[o]therwise, '[p]lainitffs would be able to convert the rule of qualified immunity… into a rule of virtually unqualified liability simply by alleging a violation of extremely abstract rights.'"  White v. Pauly, 137 S. Ct. 548, 551 (2017).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  Plumhoff v. Rickard, 572 U.S. 765, 779 (2014).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied it protects 'all by the plainly incompetent or those who knowingly violate the law.'"  Ashcroft, 563 U.S. at 743.  The Fourth Circuit has remarked, "[t]here is no doubt that the broad legal principle governing this case—that public employees may not be fired on a basis that infringes on their First Amendment rights—was clearly established… however, our focus must be narrower, as the determination of whether a given right was clearly established requires us to define that right 'at a high level of particularity.'"  Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007).

In Campbell, the Court was discussing qualified immunity's application to a plaintiff police officer's letter to her police chief "which focused overwhelmingly on personal grievances and vague gripes about fellow officers not being very nice to her."  Id.  When the court particularly defined the right as whether a reasonable officer would have known that the

protected speech touched on a matter of public concern sufficient to trigger First Amendment protection, the Court answered in the negative. Id. Similarly here, when defined at the correct level of particularity the question becomes, whether a reasonable officer would have known that inquiries into overtime and "comp time" with a coworker and with the SSPBA touched on matters of public concern sufficient to trigger First Amendment protection. That answer should also be "no," because the right at issue in this case was also not clearly established at the time of Plaintiff's termination.

In circumstances where the available caselaw shows that "the area is one in which the result depends very much on the facts of each case," this tends to prove that the violated right is not clearly established. Brosseau v. Haugen, 543 U.S. 194, 201 (2004). Indeed the Fourth Circuit has stated that, "particularly in First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, 'only infrequently will it be "clearly established" that a public employee's speech on a matter of public concern is constitutionally protected.'" McVey, 157 F.3d at 277 (referencing Bartlett v. Fisher, 972 F.2d 911, 916–17 (8th Cir.1992), which notes that "qualified immunity should rarely be denied under Pickering which requires a balancing to resolve a public employee's First Amendment claim.") Because the right at issue was not clearly defined, Sheriff Balderson is entitled to qualified immunity, and Count IV must be dismissed with prejudice.

V. **Sheriff Balderson enjoys sovereign immunity under the Eleventh Amendment with respect to monetary damages for Counts III and IV.**

"Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." Hafer v. Melo, 502 U.S. 21, 26 (1991). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its

sovereign immunity from suit even though individual officials are nominal defendants." <u>Ford Motor Co. v. Dep't of Treasury</u>, 323 U.S. 459, 464 (1945), (overruled on other grounds by <u>Lapides v. Bd. of Regents of Univ. Sys. of Ga.</u>, 535 U.S. 613, (2002)).  "[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." <u>Hafer</u>, 502 at 27 (internal citations omitted).  Therefore, when suing state officials for monetary relief in their official capacities, it "is no different from a suit against the State itself."  <u>Id.</u>

"In Virginia, sheriffs are state officials… whose positions are constitutionally created…" <u>McCoy v. Chesapeake Corr. Ctr.</u>, 788 F. Supp. 890, 893 (E.D. Va. 1992); Va. Code § 15.2.1609; Va. Const. Art. 7, § 4.  Accordingly, a suit against a sheriff in the Commonwealth of Virginia in his official capacity—or a sheriff's office—is equivalent to a suit against the state and not a "person" under § 1983.   <u>See</u> <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989) (dismissing official capacity claim against a Sheriff because neither the state nor its officials acting in their official capacities are "persons" under § 1983); <u>Doud v. Virginia</u>, 282 Va. 317, 321 (2011) (In Virginia, a county sheriff "is an independent public official whose authority is derived from the Constitution of Virginia") (quoting <u>Carraway v. Hill</u>, 265 Va. 20, 24 (2003)).

Thus, Sheriff Balderson, in his official capacity, is equivalent to Virginia and enjoys sovereign immunity under the Eleventh Amendment from both § 1983 claims and FLSA claims for monetary relief.  <u>Stewart v. North Carolina</u>, 393 F.3d 484, 488-91 (4th Cir. 2005); <u>Taylor v. Com. of Va.</u>, 951 F. Supp. 591 (E.D. Va. 1996); <u>Martin v. Wood</u>, 772 F.3d 192, 195 (4th Cir. 2014).  As such, Counts III and IV, to the extent that they are asserted for monetary relief, must be dismissed with prejudice, as no amendment will cure the fact that Sheriff Balderson is immune in these particular circumstances.

"[F]ederal courts may, [however], exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998). Therefore, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." Id. (quoting Quern v. Jordan, 440 U.S. 332, 337 (1979)). "[T]he exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally-protected rights." Id.

Plaintiff does pray for "injunctive relief" in the "wherefore" clause of his Complaint, Compl. p. 16, however, it is unspecified as to what exactly that injunctive relief is or to which Count in the Complaint it belongs. To the extent that the injunctive relief is retrospective, it too is barred by Eleventh Amendment immunity. To the extent that it is prospective, it is insufficiently alleged and must be dismissed under the applicable standard of law for failure to assert facts sufficient to permit Sheriff Balderson to defend such a claim. See supra, "Standard of Law" section.

## CONCLUSION

For the reasons set forth above, Defendant, Sheriff C.O. Balderson, respectfully requests that the Court grant his Motion to Dismiss Plaintiff, Paul Brothers IV's, Complaint against him with prejudice.

Respectfully Submitted,

_____/s/_____
**Alexander Francuzenko, VSB # 36510**
**Philip C. Krone, VSB # 87723**
**Thea A. Paolini, VSB # 95925**
**Cook Craig & Francuzenko, PLLC**
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: 703.865.7480
Fax: 703.434.3510
alex@cookcraig.com
pkrone@cookcraig.com
tpaolini@cookcraig.com
*Counsel for Defendant, Sheriff Balderson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16 day of June, 2022, I served a copy of Defendant, Sheriff

Balderson's, Memorandum of Points and Authorities in Support of his Motion to Dismiss upon

the Plaintiff via ECF filing to:

Andrew Meyer, Esq.
P.O. Box 14543
Richmond VA, 23221
Phone: 804. 358.2909
Fax:    757.257.0063
ameyer@ameyerlaw.com
*Attorney for Plaintiff*

_____/s/_____
**Alexander Francuzenko, VSB # 36510**
**Philip C. Krone, VSB # 87723**
**Thea A. Paolini, VSB # 95925**
**Cook Craig & Francuzenko, PLLC**
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: 703.865.7480
Fax: 703.434.3510
alex@cookcraig.com
pkrone@cookcraig.com
tpaolini@cookcraig.com
*Counsel for Defendant, Sheriff Balderson*